UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte DIVISION
DOCKET NO. 3:20-cv-00172-FDW-DSC

| | |
|---|---|
| **David Russell,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **University of North Carolina at Charlotte,** ) ) | |
| ) | |
| **Defendant.** ) | |

THIS MATTER is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 6). Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), and (6) for lack of subject-matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim. (Doc. No. 7). Plaintiff submitted his Motion in Opposition, (Doc. No. 9), to which Defendant replied. (Doc. No. 10). This matter is now ripe for review. For the reasons stated herein, Defendant's Motion is hereby DENIED.

**I.   BACKGROUND**

On March 19, 2020, Plaintiff David Russell ("Plaintiff") filed a Complaint against the University of North Carolina at Charlotte ("Defendant"), (Doc. No. 1), which was subsequently replaced by Plaintiff's Amended Complaint on April 9, 2020. (Doc. No. 4). As stated in his Amended Complaint, Plaintiff seeks damages against Defendant for allegedly violating his rights under Title VII. (Doc. No. 4, p. 1). Plaintiff alleges he has been employed by Defendant since 2009 as the Anne Reynolds Belk Distinguished Professor of Music, a position for which he asserts he is eminently qualified. Id. at 2-3. In 2017, eight years into his employment with Defendant, Plaintiff reported incidents of sexual harassment committed by the then-Chair of the Music Department, Dr. Jay Grymes ("Dr. Grymes"). Id. at 4. Plaintiff also participated in the Title VII investigation,

presumably conducted by the school,[1] into the sexual harassment allegedly committed by Dr. Grymes. Id. The reports against Dr. Grymes and the subsequent Title VII investigation ultimately led to the removal of Dr. Grymes from his position as Chair of the Music Department; however, he retained his employment with Defendant and was assigned to co-chair a committee tasked with evaluating professors' job performance, including Plaintiff's. Id. After Dr. Grymes' removal from his position as Department Chair, Plaintiff met with the University Provost and Dean to discuss the sexual harassment, even though the Dean was implicated in Plaintiff's report. Id.

Plaintiff alleges he suffered "an ongoing pattern of retaliatory behaviors against him" because of his report against Dr. Grymes. (Doc. No. 7, p. 5). As a specific example of such retaliatory behavior, Plaintiff alleges he was unanimously found to meet expectations in his 5-year Post-Tenured Review in 2019, but that the Interim Chair of the Department of Music later overturned this decision. Id. Plaintiff alleges he was given a "letter of reprimand," which was maintained in his personnel file, and was he required to "create and submit '[r]emedial [p]lans.'" Id. Defendant also allegedly threatened termination of employment if Plaintiff did not make progress in remediation. Id. Plaintiff contends this later decision was the product of an evaluation "far outside the normal process" typically used for professor evaluation. Id. For instance, the Interim Dean who allegedly overturned Plaintiff's initial favorable review was not experienced in music, but rather, in architecture. Id. The decision to overturn was also allegedly based on Dr. Grymes' written remarks, which were made around the time Plaintiff reported Dr. Grymes' inappropriate conduct. Id. Plaintiff also alleges the decision to overturn his favorable review was based on an altered job description for his position, which included a requirement that Plaintiff "bring[] in external grants," which had allegedly not been part of Plaintiff's job description for the

---

[1] The Complaint is unclear as to the specific body that conducted the Title VII investigation.

prior 10 years. (Doc. No. 4, p. 6). Plaintiff contends this altered job description was "designed by Defendant to serve as a way to keep [Plaintiff] from 'meets expectations' . . . and [was] a pretextual device used . . . to cover [Defendant's] retaliatory actions." Id. at pp. 5-6.

Plaintiff also points to other behavior exhibited by Defendant in support of his retaliation claim. Plaintiff alleges Former Dean Ken Lambla referenced the Title VII investigation in a faculty meeting and explained "[n]ow that this has been done . . . you all will have a very hard job ahead of you." Id. at p. 6. Plaintiff alleges $50,000 was cut from the Department of Music's budget for part-time faculty, and the Title VII investigation was repeatedly referred to as a "division" or "split" in the faculty. Finally, Plaintiff also makes brief allegations of retaliatory behavior toward other faculty members, although such claims are not before this Court.[2]

Defendant filed the instant Motion to Dismiss on May 18, 2020. (Doc. No. 7). Defendant makes two arguments in support of its motion: (1) Plaintiff has failed to state a prima facie claim for relief under Title VII; and (2) sovereign immunity bars suit against Defendant.

## II.    STANDARD OF REVIEW

### A. Subject Mater Jurisdiction

Rule 12(b)(1) provides for dismissal of claims against all defendants where the Court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and

---

[2] Defendant moves for dismissal of any claims asserted on behalf of other faculty members. (Doc. No. 7, pp. 14-15). Plaintiff makes clear that he is not asserting claims on behalf of other faculty members. (Doc. No. 9-1, p. 11). Accordingly, any such argument made by Defendant in its Motion to Dismiss are moot and will not be further addressed by this Court.

3

raise the issue of subject matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

When a court considers its subject matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredericksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held:

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review.

Id., at 768-69 (citations omitted).

### B. Personal Jurisdiction

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence[.]" New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) ). However, "[w]hen a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff

has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro Ar, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citation omitted). Under these circumstances, a court must "assume the credibility of [the plaintiff's] version of the facts[,]" "construe all relevant pleading allegations in the light most favorable to the plaintiff[,]" "construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff,]" and "draw the most favorable inferences for the existence of jurisdiction." Id. at 558, 560 (citations omitted); Combs, 886 F.2d at 676.

### C. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when the pleading party fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal "sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); accord E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive only if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

5

## III. ANALYSIS

At the outset, the Court addresses Defendant's argument that the Court has no jurisdiction over Plaintiff's Title VII claim. Defendant contends there is no jurisdiction because North Carolina's State Employee Federal Remedy Restoration Act ("SEFRRA") does not waive sovereign immunity for claims brought pursuant to Title VII. (Doc. No. 7, p. 16). Defendant is correct in its assertion, but not in its conclusion. SEFRRA only waives North Carolina's immunity for claims brought under the FLSA, ADA, ADEA and FMLA. N.C. Gen. Stat. § 143-300.35 (2020). However, Congress abrogated state sovereign immunity when it enacted Title VII pursuant to its powers under Section 5 of the 14th Amendment. See Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S. Ct. 2666, 2671, 49 L. Ed. 2d 614 (1976) ("[T]he Eleventh Amendment . . . [is] necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment."); see also Blakney v. N.C. A&T State Univ., 2019 WL 1284006, at *12 n.15 (M.D.N.C. Mar. 20, 2019) ("The ADEA did not abrogate state sovereign immunity; Title VII did." (citation omitted)). Accordingly, sovereign immunity is not a bar to this suit. Defendant's subject matter and personal jurisdiction arguments are without merit.

Turning now to the crux of Defendant's Motion to Dismiss, Defendant argues Plaintiff has failed to state a claim for retaliation under Title VII. (Doc. No. 7, p. 6). Specifically, Defendant argues: (1) Plaintiff has not alleged that an adverse employment action was taken against him; and (2), Plaintiff has not sufficiently alleged causation between the protected activity and the alleged adverse action.[3] Id. at pp. 6-13.

---

[3] Defendant also argues Plaintiff has not sufficiently alleged that a decision-maker had knowledge of the protected activity. (Doc. No. 7, p. 7). Knowledge is part of the causation element of a Title VII claim; as such, Defendant's knowledge argument will be addressed in the Court's causation analysis.

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made . . . unlawful . . . or because [the employee] has made a charge [against his employer]." 42 U.S.C. § 2000-3e(a) (2018). To assert a retaliation claim under Title VII, a plaintiff must show "(1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff's Amended Complaint makes clear he engaged in protected activity by reporting sexual harassment and participating in a Title VII investigation. Accordingly, the forthcoming analysis is limited to the latter two elements of a Title VII retaliation claim.

### A. Adverse Action

"[A]n adverse employment action is one that a reasonable employee would have found materially adverse, which . . . means that [the action] 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Rigg v. Urana, 113 F. Supp. 3d 825, 829 (M.D.N.C. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). "The requirement of an adverse employment action seeks to differentiate those harms that work a 'significant' detriment on employees from those that are relatively insubstantial or 'trivial.'" Adams v. Anne Arundel Cnty. Pub. Schs., 789 F. 3d 422, 431 (4th Cir. 2015) (quotation and citation omitted). While there are "typical" employment actions that would clearly be adverse, "the significance of any given act of retaliation will often depend on the particular circumstances." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 69.

Here, Plaintiff has plausibly alleged he has suffered an adverse employment action. His Complaint makes clear that a favorable review was subsequently overturned based, at least in part, on remarks made by Dr. Grymes. Plaintiff also alleges the job description for his position was

changed to include an extra duty that had not previously been required of him, and this extra duty was included specifically to prevent him from obtaining favorable job reviews. Moreover, Plaintiff has alleged Dr. Grymes was appointed to serve as Co-Chair of a committee that oversees and evaluates Plaintiff's work *after* Plaintiff had reported on Dr. Grymes. These allegations, taken in the light most favorable to Plaintiff and coupled with the allegation that Plaintiff had remained in good standing during the first ten years of his career, plausibly suggest Plaintiff has suffered at least one adverse employment action. Accordingly, Defendant's argument that Plaintiff has not sufficiently alleged an adverse employment action fails.

### B. Causation

The third element of a Title VII retaliation claim is causation. A plaintiff's prima facie case of retaliation need not show that the plaintiff's "'protected activit[y] [was the] but-for cause[] of the adverse action;'" however, a plaintiff must still "make some showing of causation." Perkins v. Int'l Paper Co., 936 F.3d 196, 214 (4th Cir. 2019) (quoting Strothers v. City of Laurel, Md., 895 F.3d 317, 335 (4th Cir. 2019)). Such showing can be made by either alleging that "'the employer either understood or should have understood the employee to be engaged in protected activity and . . . the employer took adverse action against the employee soon after becoming aware of such activity.'" Perkins, 936 F.3d at 214 (quoting Strothers, 895 F.3d at 335-36). Causation can generally be inferred when the temporal proximity between the protected activity and adverse action is "very close." See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (finding no causation when the adverse action occurred 20 months after the protected activity). However, when close temporal proximity is not established, "'courts may look to the intervening period for other evidence of retaliatory animus.'" Lettieri v. Equant

Inc., 478 F.3d 640, 650 (4th Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

With respect to causation, Defendant first argues Plaintiff has not sufficiently alleged Defendant's knowledge of the protected activity. (Doc. No. 7, p. 7). Defendant argues Plaintiff has not asserted any facts indicating Interim Dean Gray had knowledge of Plaintiff's protected activity. Id. at p. 7. However, Plaintiff has alleged that at least one decisionmaker had knowledge of the protected activity because the Complaint states that "[t]he Dean" participated in a meeting with Plaintiff and the Provost to discuss Plaintiff's report of sexual harassment. (Doc. No. 4, p. 4). It is plausible to infer from these allegations that decisionmakers within the Department of Music had knowledge, or should have had knowledge, of Plaintiff's protected activity. Thus, Defendant's knowledge argument as to this point fails.

Finally, Defendant argues the facts alleged in the Complaint do not sufficiently support a causal connection between the protected activity and the adverse action because the time between the protected activity and alleged adverse action was too long. (Doc. No. 7, p. 11). Plaintiff alleges he reported Dr. Grymes' sexual harassment in 2017, and the only dated adverse action alleged in the Complaint occurred in "Spring 2019." (Doc. No. 4, pp. 4-5). Thus, roughly two years elapsed between the protected activity and alleged adverse action. In his response to this Motion, Plaintiff contends this two-year gap does not destroy causation because Defendant did not have an opportunity to retaliate until Plaintiff's 2019 Tenure Review. (Doc. No. 9-1, p. 10). Indeed, in Templeton v. First Tenn. Bank, N.A., 424 F. App'x 249 (4th Cir. 2011), the Fourth Circuit held that a large temporal gap between the protected activity and adverse action can be overcome when a plaintiff shows that the employer retaliated at its first opportunity to do so. Id. at 251. Considering the allegations in the light most favorable to Plaintiff, the Court finds Plaintiff has alleged sufficient

9

facts such that it is least plausible he suffered an adverse employment action because he engaged in protected activity. Accordingly, Defendant's argument as to causation likewise fails.

## IV. CONCLUSION

For the foregoing reasons, it is therefore ORDERED that Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Signed: October 22, 2020

Frank D. Whitney
United States District Judge