UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00172-FDW-DSC

| | |
|---|---|
| DAVID RUSSELL,<br><br>**Plaintiff,**<br><br>v.<br><br>UNIVERSITY OF NORTH CAROLINA AT CHARLOTTE,<br><br>**Defendant.** | **ORDER** |

THIS MATTER is before the Court on Defendant University of North Carolina at Charlotte's ("Defendant" or "UNCC") Motion for Summary Judgment, (Doc. No. 26) and Motion to Strike, (Doc. No. 34). The Motions have been fully briefed and are ripe for review. For the reasons stated herein, Defendant's Motion for Summary Judgment, (Doc. No. 26), is GRANTED and Defendant's Motion to Strike, (Doc. No. 34), is DENIED AS MOOT.

I. **BACKGROUND**[1]

On March 19, 2020, Plaintiff David Russell ("Plaintiff") filed a Complaint against UNCC, (Doc. No. 1), which was subsequently replaced by Plaintiff's Amended Complaint on April 9, 2020. (Doc. No. 4). Plaintiff seeks damages against Defendant for allegedly violating his rights under Title VII by retaliating against him for engaging in protected activity. Id.

In early October 2017, Plaintiff reported instances of sexually and racially inappropriate conduct to Defendant's Title IX office. (Doc. No. 31, p. 2; Doc. No. 33-4). Specifically, Plaintiff reported that he had witnessed Dr. Jay Grymes ("Dr. Grymes"), then-Chair of the Music

---

[1] The background set forth herein is derived from a combination of the parties' briefing and attached exhibits. The background is taken in the light most favorable to Plaintiff as the nonmoving party.

1

Department at UNCC, make sexually and racially inappropriate comments to male faculty and staff. (Doc. No. 33-4). Following the reports submitted by Plaintiff and other faculty members, Defendant's Title IX Office concluded Dr. Grymes had not engaged in sexual harassment but determined that some of Dr. Grymes' "substantiated behaviors and statements fell below the heightened expectations of department chairs." (Doc. No. 27-8, p. 2). As a result, Dr. Grymes' position as Chair of the Music Department was not renewed, and he was issued a Letter of Reprimand in April 2018. Id. at pp. 2, 42-43.

Shortly after Dr. Grymes was reprimanded, the Department of Music held a faculty meeting in which it was announced that Dr. Fred Spano ("Dr. Spano") would serve as Interim Chair of the Music Department. (Doc. No. 33-12, pp. 9-10). According to Plaintiff's deposition transcript, at the faculty meeting, Dean Kenneth Lambla ("Dean Lambla") implied the Department of Music's budget would be cut "now that this has happened." (Doc. No. 33-1, p. 4). Plaintiff contends Dean Lambla's statements referred to the Title IX investigation into Dr. Grymes and that the statements "created suspicion" amongst the faculty. Id. at p. 8. According to Mary Welsh, Director of Business Affairs for the College or Arts and Architecture, the Department of Music's budget was not cut.[2] (Doc. No. 27-12).

It is unclear what, if anything, happened within the few months after the Department of Music faculty meeting in April 2018. However, in late 2018, Dr. Lee Gray ("Dr. Gray") was appointed Interim Dean of the College of Arts and Architecture, replacing Dean Lambla.[3] (Doc. No. 27-16). As Interim Dean, Dr. Gray was responsible for reviewing the performance reviews for tenured faculty members, like Plaintiff. (Doc. No. 33-2).

---

[2] The Department of Music is housed within the College of Arts and Architecture.
[3] The connection between the faculty meeting in April 2018 and Dr. Gray's appointment to Interim Dean is unclear.

In March 2019, Dr. Spano, as Interim Chair of the Music Department, received an email from one of Plaintiff's students, Elizabeth Farley ("Ms. Farley"). In an email dated March 13, 2019, Ms. Farley told Dr. Spano she had only received two violin lessons from Plaintiff during the first two months of the semester and Plaintiff was consistently incommunicative. (Doc. No. 27-16, p. 6). Dr. Spano passed along the complaint to Dr. Gray. Id. at p. 5. Dr. Gray asked Dr. Spano to further investigate Ms. Farley's complaints and determine whether other students had similar attendance and communication issues with Plaintiff. Id. at p. 2. After an investigation, which revealed that Plaintiff had consistent attendance and communication issues with students, Dr. Spano sent Dr. Gray a letter summarizing his findings. Id. at pp. 17-22.

In May 2019, two months after Dr. Gray was made aware of Plaintiff's consistent teaching deficiencies, Dr. Spano sent Dr. Gray a report recommending Plaintiff receive a "Meets Expectations" rating for Plaintiff's 2019 Tenured Faculty Performance Review.[4] (Doc. No. 33-9). However, the recommendation contained a caveat: Plaintiff's deficient teaching conduct should be further investigated, and Plaintiff should reaffirm his "on-campus teaching commitments." Id. at p. 3.

On May 30, 2019, Dr. Gray issued a Performance Review and Written Reprimand to Plaintiff. (Doc. No. 27-16, pp. 26-31). The Review found that Plaintiff did not meet expectations in his teaching and research requirements. Id. at pp. 27-28. Plaintiff met his expectations for his service requirement. Id. at p. 28. The Reprimand detailed Plaintiff's consistent teaching deficiencies and outlined the areas in which Plaintiff was expected to improve. Id. at pp. 29-30.

---

[4] The Tenured Faculty Performance Review occurs every five years, while annual performance reviews occur every year. See (Doc. No. 27-14, pp. 1-10).

3

Upon receipt of the May 30 Performance Review, Plaintiff disputed his rating of "does not meet expectations."[5] (Doc. No. 27-16, p. 3). Dr. Gray evaluated the basis for Plaintiff's dispute and issued a Revised Performance Review on August 30, 2019, which upgraded Plaintiff's rating for Research to "meets expectations." Id. at pp. 32-35. Plaintiff's rating for teaching remained the same. Id.

On September 10, 2019, ten days after the issuance of the Revised Performance Review, Plaintiff filed a retaliation charge with the EEOC. (Doc. No. 31, pp. 7-8). After receiving Notice of his Right to Sue, (Doc. No. 1-2), Plaintiff filed the instant case, asserting Defendant impermissibly retaliated against him in his 2019 Performance Review and Written Reprimand.

**II.  STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

---

[5] Plaintiff does not point to written evidence of his dispute. (Doc. No. 31, p. 7).

4

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's sole claim of retaliation under Title VII. (Doc. No. 26). According to the Complaint, Plaintiff is suing Defendant for retaliation because, as Plaintiff alleges, Defendant engaged in a pattern of adverse employment actions towards Plaintiff after Plaintiff reported on unlawful sexual harassment he witnessed. (Doc. No. 4).

Title VII makes it unlawful for an employer to retaliate against an employee when the employee engages in reasonable conduct opposing conduct made unlawful by Title VII. 42 U.S.C. § 2000e-3. To succeed on a Title VII retaliation claim, "a plaintiff must prove '(1) that []he engaged in a protected activity,' as well as "(2) that [his] employer took an adverse employment action against [him],' and '(3) that there was a causal link between the two events.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (citing EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005)). If the plaintiff has established his prima facie case

5

of retaliation with circumstantial, as opposed to direct, evidence, which is the case here, the burden then shifts to the defendant to "show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Foster v. Univ. of. Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). If the defendant sufficiently establishes a non-retaliatory reason for the adverse action, the "burden shifts back to the plaintiff to rebut the employer's evidence" and show that the employer's non-retaliatory reason was pretext. See id.

In its Motion for Summary Judgment, Defendant does not dispute that Plaintiff engaged in protected activity but rather, disputes only the adverse action and causation elements of Plaintiff's prima facie case. (Doc. No. 28, p. 11). The Court will accordingly focus its analysis on the latter two elements.

      a. **Adverse Employment Action**

"[A]n adverse employment action is one that a reasonable employee would have found materially adverse, which . . . means that [the action] 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Rigg v. Urana, 113 F. Supp. 3d 825, 829 (M.D.N.C. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). "The requirement of an adverse employment action seeks to differentiate those harms that work a 'significant' detriment on employees from those that are relatively insubstantial or 'trivial.'" Adams v. Anne Arundel Cnty. Pub. Schs., 789 F. 3d 422, 431 (4th Cir. 2015) (quotation and citation omitted). Actions considered significant enough to be an adverse employment action typically include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011).

6

Employment actions that cause an *insignificant* detriment on employees, such as written or verbal reprimands, do not qualify as adverse employment actions when they do "not lead to further discipline." Adams, 789 F.3d at 429. Specifically relevant to this matter, negative performance reviews or downgrades in performance evaluations must result in "a loss of pay, demotion, or other adverse employment consequence[]" to constitute an actionable adverse employment action. E.g., Jones v. Dole Food Co., Inc., 827 F. Supp. 2d 532, 556 (W.D.N.C. 2011); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) ("[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." (quoting Spears v. Mo. Dep't of Corr. & Hum. Res., 210 F.3d 850, 854 (8th Cir. 2000))).

Here, the only adverse actions Plaintiff points to are the 2019 Performance Review Rating of "does not meet expectations" in teaching and the Written Reprimand.[6] Plaintiff has not pointed to any evidence that the "does not meet expectations" evaluation or Written Reprimand have resulted in a loss of pay, demotion, or other adverse employment action. To the contrary, Defendant points out—and Plaintiff does not dispute—Plaintiff remains in the same position he had prior to the 2019 Performance Review and Written Reprimand. Plaintiff was and is the tenured Anne R. Belk Distinguished Professor of Music for Violin, a position for which he is currently compensated for at rates higher than his peers. (Doc. No. 27-8, p. 1). Indeed, Plaintiff readily admitted that he has "not yet suffered any financial losses to be mitigated" as a result of his downgraded performance evaluation. (Doc. No. 27-3, p. 2).

---

[6] Plaintiff makes other generalized allegations of "threatening" and "retaliatory" actions taken by Defendant throughout his Complaint. (Doc. No. 4.). However, the *only* record evidence Plaintiff points to is the 2019 performance evaluation downgrade and Written Reprimand issued by Dr. Gray. (Doc. No. 31, pp. 9-11).

7

Plaintiff's primary argument urging this Court to find there is a genuine dispute as to whether he has suffered an adverse employment action is without merit. He tacitly acknowledges the obvious defects in his adverse action allegations and argues—without offering any legal authority in support—that "even if none of the actions that a plaintiff alleges could individually be characterized as adverse, a series of actions taken against a plaintiff may, in the aggregate, constitute retaliation." (Doc. No. 31, p. 11). Assuming *arguendo* a series of benign actions does constitute an adverse retaliatory action, Plaintiff has not provided any evidence at all, let alone evidence sufficient to raise a genuine issue such that a reasonable jury could find in his favor.[7]

Moreover, and perhaps most notably, Plaintiff asserts the 2019 downgraded performance rating and Written Reprimand resulted, at least in part, from the letter sent by Dr. Spano to Dr. Gray in March 2019. (Doc. No. 31, p. 6). However, what Plaintiff fails to acknowledge is that Dr. Spano's letter summarizes interviews with ten (10) of Plaintiff's students detailing how Plaintiff was (1) consistently late to or absent from scheduled lessons, (2) frequently engaged in off-task teaching, and (3) impermissibly deficient in communicating with his students. (Doc. No. 27-16, pp. 17-21). Defendant has provided declarations from students confirming Dr. Spano's findings, (Doc. Nos. 27-9, 27-10), screenshots of text messages exchanged between Plaintiff and a student attempting to reschedule a class cancelled by Plaintiff, (Doc. No. 27-16, pp. 7-13), as well as emails from at least one student detailing her "frustration" with Plaintiff's lack of communication and lesson availability. Id. at p. 6.

---

[7] For example, Plaintiff suggests that he was evaluated off of a job description different from the description for the job he actually held. (Doc. No. 31, p. 11). The only evidence Plaintiff appears to provide in support of this contention are documents explaining the process by which tenured music faculty are reviewed. (Doc. No. 33-3). However, Plaintiff fails to cite the documents or explain how his review process differed from the review process outlined in the documents. (Doc. No. 31).

8

Case 3:20-cv-00172-FDW-DSC   Document 41   Filed 08/31/21   Page 8 of 11

Plaintiff does not dispute any of Defendant's evidence establishing Plaintiff's consistently poor performance; he simply argues that Dr. Spano's letter summarizing the poor performance should have included Plaintiff's successes as a professor, (Doc. No. 31, p. 7), which, in the context of a wrongful discharge action, is irrelevant. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000), cert. denied, 531 U.S. 875 (2000) ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (internal quotation and citation omitted)). Ultimately, Plaintiff is not "insulated from the consequences of . . . poor performance," Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008), and it was his poor performance, not any protected conduct, that led to his downgraded performance rating and Written Reprimand.

Defendant has met its burden in establishing a lack of genuine dispute as to whether Plaintiff's downgraded performance rating and Written Reprimand are adverse actions. Plaintiff has not provided any evidence from which a reasonable jury could find in his favor. Plaintiff's downgraded performance rating and Written Reprimand have not resulted in his firing or demotion, they have not resulted in a loss in pay, and they have not resulted in a significantly different job assignment. Moreover—as Plaintiff points out—Plaintiff's downgraded performance rating and Written Reprimand were a direct result of an investigation that revealed Plaintiff's deficient work performance. There is no genuine dispute as to whether Plaintiff has suffered an adverse employment action, an essential element of his retaliation claim. He has not, and Defendant is entitled to summary judgment.

### b. Causal Link

Although the Court need not engage in extensive analysis as to causation, the Court finds it nonetheless appropriate to address the evidence as to the last necessary element of Plaintiff's retaliation claim. According to the undisputed record evidence, Plaintiff engaged in protected

9

conduct on or around October 9, 2017, when he emailed Defendant's Title XI coordinator reporting on Mr. Grymes' sexually and racially inappropriate behavior. (Doc. No. 33-4). The only actions Plaintiff can point to as retaliatory occurred on May 30, 2019, when Plaintiff was provided a "Letter of Reprimand," and on August 30, 2019, when Plaintiff received his downgraded performance rating. (Doc. No. 31, pp. 5-7; Doc. No. 33-1, pp. 41-48).

Plaintiff asserts a causal connection exists between his protected activity in 2017 and the alleged retaliation in 2019, attempting to establish a causal connection between two events that occurred two years apart. Plaintiff's assertion is unreasonable. Courts have found no causal connection exists when as little as four months had passed between the protected activity and retaliatory action. Huan Zhou v. Lowe's Home Ctrs., LLC, No. 1:20-cv-370, 2021 WL 2666595, at *8 (E.D. Va. June 29, 2021) (four months); Jones v. Dole Food Co., Inc., 827 F. Supp. 2d 532, 554 (W.D.N.C. 2011) (nine months); Booth v. Md., 337 F. App'x 301, 310 (4th Cir. 2009) ("[N]ine months . . . is too remote to prove the causal connection alone."). It stands to reason, then, that two years is too remote to support a finding of causation, particularly when the decisionmaker was not aware of the protected activity. Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998) ("[T]he [decisionmaker's] knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish [causation]."). The decisionmaker here, Dr. Gray, attests he was not aware of Plaintiff's Title IX report in 2017, (Doc. No. 27-16, p. 2), and Plaintiff does not dispute this.

Plaintiff's argument that the "no earlier opportunity to retaliate" exception to the causation requirement applies is misplaced. The exception is more appropriate in a reinstatement case, see Templeton v. First Tenn. Bank, N.A., 424 F. App'x 249, 251 (4th Cir. 2011) (explaining the "no earlier opportunity to retaliate" exception), and Defendant had opportunity to take retaliatory

10

action against Plaintiff during Plaintiff's Annual Performance Reviews in 2017 and 2018. (Doc. No. 27-5, p. 14-65) (copies of Plaintiff's annual reviews dating back to 2013).

All of the undisputed evidence before the Court establishes Defendant had no retaliatory animus when it issued Plaintiff a letter of reprimand and downgraded his performance rating in 2019. Roughly two years had elapsed between the protected activity and the allegedly adverse actions, and Dr. Gray was not aware of the protected activity when he issued the Written Reprimand and downgraded performance rating. It is accordingly implausible that the 2017 and 2019 events are causally connected. Thus, even if a reasonable jury could find in Plaintiff's favor as to the adverse action element, the same cannot be said for the causation element. Defendant is entitled to summary judgment.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgement, (Doc. No. 26), is GRANTED. Defendant's Motion to Strike, (Doc. No. 34), is DENIED AS MOOT. The Clerk is respectfully DIRECTED to enter a separate judgment in accordance with the terms of this Order.

IT IS SO ORDERED.

Signed: August 31, 2021

Frank D. Whitney
United States District Judge